The final case for argument this morning is 13-1668 Stryker Corporation v. Zimmer Good morning and may it please the court. It's our position that the district court made significant legal errors in this case requiring reversal, so let me be more specific and cut to the chase. In the 329 patent, the district court covered the word handle, which is in the claims, to cover not only the barrel of a gun-shaped lavage device, but to cover the nub behind the barrel, and it did so even though the specification repeatedly distinguishes between the barrel and the handle. And even more significantly, in a parent application, there was a reference, the matching reference, which was distinguished on the ground that the motor was in the nub behind the barrel, and the issue there was what was the handle. So the exact same situation occurred in that parent application, and it was distinguished, and it just so happens that the accused device has its motor exactly in the same location as in the matching patent, namely behind the nub. I understand your argument, and I think I really do appreciate it. The difficulty I'm having is that your client didn't propose a clear claim construction in that regard at the trial below. They just said plain and ordinary meaning, and even the prosecution history and the parent application and what you're citing here, my understanding of the record, you can correct me if I'm wrong, is that that wasn't even brought to the foreground in connection with the claim construction dispute. That only came up in connection with infringement. Now the court allowed it, but I think the court also noted that you're not going to revisit claim construction now, so you're going to put it in the context of infringement. So it seems to me you have a more difficult hurdle here in terms of a process, given how the case unfolded below. Do you want to address that? Your Honor, I respectfully disagree. In the Markman brief, and if you look at A5701-05, you will find that the argument was made for plain and ordinary meaning, but in the light of the specification, and the prosecution history was referred to expressly, not in the Markman hearing, but in the summary judgment briefing, and this court's jurisprudence makes clear that claim construction is a rolling process. It doesn't all have to happen in the Markman portion of the case. So we have A5701-05, where they made those points in the Markman brief, and we have A8319-92-22, which is not in the appendix, but which is in the record, showing it was raised in the summary judgment briefing. And I will note that the district court expressly held that the position of striker was also plain meaning in the light of the specification. So these issues were raised below, and there was no holding that there's a waiver below. But Zimmer never came in and said, we ought to have a claim construction that says there's a separate handle and there's a separate barrel, right? They just said plain and ordinary meaning, which makes it a little ambiguous. I mean, it's not a clear-cut argument that you're making here on appeal in terms of how you would have liked the construction. It's clear what you think the construction should have been. That's not plain and ordinary meaning. That's the distinction between the handle and the barrel, right? Your Honor, I think it is the plain and ordinary meaning. And we argued that. We argued that at the pages I gave you, A5701-05. We argued that it's the plain and ordinary meaning, and if you read the specification and the prosecution history, which we refer to later, you will see that those sources confirm that the plain and ordinary meaning of handle is exactly what our position was. Our position is it is not the barrel. In fact, if you look at the specification of the pattern… What if the barrel is designed to be held? Pardon? What if the barrel is designed to be held? I understand your point that in the claim there's a general claim that just says handle, and then there's a dependent claim that says handle and barrel, but I don't see that as necessarily excluding barrel from the plain definition of handle. If you can hold the device by what you call the handle and what you call the barrel. Your Honor, the specification… I don't have the… Do you have the 383? The 329 pattern? The specification, basically, very early on in the specification, unfortunately I left my visuals in my bag, describes a pistol-like device. And it describes the pistol-like device and it talks about the handle. Well, I understand that's in the specification, but I didn't see anything in the claim that necessarily limited it to just pistol-like devices. Couldn't you have a wand-like device where you might have just one long thing and there's no barrel on that at all? Your Honor, the claim is not restricted to a pistol-like device, I agree. But when you have a pistol-like device and the question comes up, what is the handle and what is the barrel, you have to look at the specification, which actually… Well, I guess my question is, can't the barrel also be a handle? No. Even if it's designed to be held? Your Honor, the issue is not how it's… That was the interpretation given by the district court. Well, isn't that the plain meaning of handle, something that you hold it by? Your Honor, in the context of a pistol-like device, and let me go back to your earlier question, and that is, the claim is not restricted to a pistol-like device. But when you have a pistol-like device and you look at what the claim is covering, you have to look at it in terms of what would you call a pistol-like device. If you go to the web and you look at pistols or guns, you will find that the barrel is what is traditionally known as the barrel of the gun and the handle is what is traditionally known as the handle of the gun. It is true that these devices were designed to be held in multiple places, but that does not convert a handle to a barrel, and the proof of the pudding is the Machen prosecution, in which they said, having that very issue before them, they had a pistol-like device and the motor was in the nub behind the barrel, and they said, that reference doesn't anticipate us because that is not the handle. So we have a prosecution history… But here you've got an accused device that's got a rounded nub, which is… What's the word for it? It's pebble, which suggests that this is all done for purposes of allowing it to be held, right? No, Your Honor. The nub is there because the motor is in the rear of the barrel, and you needed a segment of this pistol-like device to house the motor, and that is why the nub is there. Now, there was cross-examination in which counsel for Stryker repeatedly tried to get the witnesses, May and Donaldson, to admit that the device was designed to be held in the nub. They never agreed that it was designed to be held in the nub. At one point he said, I guess you can call it… He never said designed to be held. I guess you can call it a handle, he said, but I suggest that the prosecution history, the record in the case, does not support the notion that a barrel is a handle regardless of where it is held or how it is to be held. Nobody ever suggested that because it is held other than Stryker, because it is designed to be held in the barrel, that makes it a handle. Let me move you on to just one logistic question, one technical question, which is, it's my understanding that you would need a reversal on both the 329 and the 807 in order to affect the damages calculation here. That's correct. That's correct, Your Honor. Can we move on to willfulness? Yes. And let me ask you about Highmark and Octane and whether or not you think that those cases have had any effect on the standard of review or how we would evaluate the 284 issue. We filed a paper with the court, as the court knows, and we pointed out that Octane Fitness and All Care, which I know a little about since I argued the All Care case, do not affect this case. Those cases dealt with Section 285, dealing with enhanced damages, and we're talking willfulness as 284. And the case law supports the notion that attorney fees are compensatory and the willfulness holding and the award of enhanced damages is punitive damages. And we cite several cases, Safeco, the Supreme Court case, and a case of this court which cited that case, holding that when you have willfulness, that requires a reckless finding, and reckless finding requires an objective review. So our position is that Octane Fitness and All Care Highmark do not affect this case, but we also will note two additional things. It's our position that it doesn't make any difference whether those cases affect this case because our position is that our position was reasonable, even if you look at the lower standard. Our position that a barrel is not a handle is reasonable. Our position that you can't have on the 807 patent, you can't have a broad construction for infringement and a narrow construction for validity is reasonable. Even if Octane and Highmark, or whatever the names of those Supreme Court cases are, didn't change the standard for objective willfulness, don't they impact our standard of review? The two statutes seem very similar in terms of leaving it to the district court to decide both attorney fees and extra damages. Your Honor, the standard of review was dealt with specifically in the All Care case, and I will note one thing and then I will add another thing to it. There's a footnote in that case, footnote two, and the standard of review there was said to be deferential in that case, dictated by the Octane Fitness case. The court said, since we've decided Octane Fitness, this is the decision we make in All Care-Highmark. Footnote two says, even under a deferential standard of review, you must review factual errors for clearly erroneous review because that is an abuse of discretion and you have to review legal errors separately. So I'm suggesting, even if there is a deferential review, the result is exactly as we suggest it should be, and moreover, the case law, I don't think Octane Fitness and All Care impact, one way or the other, on the case law of this court. And the case law of this court says it's de novo review when you're talking about objective recklessness. And so I suggest that, first of all, those two Supreme Court cases don't affect this case, and the review- It has de novo review because it's an objective test, and it's therefore a test as a matter of law, or couldn't we direct the district court to look at whether somebody was objectively unreasonable, but then still defer to the district court's determination on objectively unreasonable? Your Honor, the case law basically has said before Octane Fitness- I understand. We applied de novo and we're bound by that unless we go- Right. I'm just wondering what the impact of that is. The impact- It does seem to me that there's a pretty decent argument that it didn't change the standard for objective unreasonableness or for willfulness, but I'm a little more concerned that they may want us to defer to the district court, given the language of the statute. Your Honor, the cases, as I read them, say- The question is, who is in the best- Before Octane Fitness and all that, who is in the best position to make these determinations? Just as in Markman, the court said it's a mongrel case, there are actually some factual components of it, but notwithstanding that fact, we are going to dictate that there's no deferential review that is reviewed de novo. I think the same rule applies here, but I want to make clear, our position is it doesn't make any difference what the standard review is. We think we satisfy either test. What about attorney's fees? What happens to attorney's fees in this case? Because clearly there are- The attorney fee standard is subject to the Supreme Court high mark and Octane Fitness cases, in which there is deferential review, again, subject to that footnote too, and that is- But on the merits though, is it your view that if hypothetically we were to agree with your position on willfulness, that because the judge's decision on attorney's fees hung heavily on the willfulness, that there's a reversal on the attorney's fees, or are the attorney's fees something that would have to be sent back for reevaluation? The former. Because? I think it's subject to the willfulness. Because why? Because it's so clear that the district court- Because they're all tied together. I think the decision below was really tied to the willfulness finding, and the willfulness finding dictated everything. So, for example, if you reversed on two of the three patents, that would very well impact on the entire package, because the district court's decision was based on everything before him. And if the district court had found only one part of the package to be problematical, that might have led him to decide the case one way. If he found three parts of the package problematical, that led him to decide it another way. Thank you. Let's hear from the other side, and we'll give you three minutes of rebuttal, and therefore we'll add three minutes to the other side's time to keep it even. Thank you. Ms. Wang? May it please the Court. The district court's judgment should be affirmed in its entirety. After a two-week jury trial and extensive post-trial briefing, Zimmer was found to have willfully infringed all three of Stryker's asserted patents. And having had the opportunity to consider all of Zimmer's defenses, including those abandoned on appeal, the district court found that Zimmer's infringement was flagrant, and that this was not a closed case. The district court observed that Zimmer chose a high-risk strategy, competing first, worrying about the consequences later. On appeal here, Zimmer attempts to justify its willful and flagrant infringement by ignoring the jury verdict, providing new defenses to make this case appear close, despite the district court's finding to the contrary. Here, there's substantial evidence… Can I ask you about the 807 patent? Absolutely. So the district court's interpretation of the term receiving seems to make it synonymous with connecting. But receiving seems to imply a much more limited kind of definition than just connecting. Why is it not an error there, which infects the summary judgment? Your Honor, as we stated in the brief, the receive argument from Zimmer was sort of an afterthought. Receive was not part of Zimmer's initial non-infringement contentions. It was not a claim term that was brought up as a definitive claim term. Well, I understand that they didn't bring it up as a claim term because they thought it was plain. But in the course of briefing the summary judgment motion, it became very clear that they had a different definition than you did, and the district court ended up siding with you. So I don't see why that's not up for review. And if we think that the district court erroneously interpreted receiving, then doesn't it have to go back? I don't think so, and this is why. Even aside from the waiver issue, there's simply no basis for bringing in any kind of limitation that limits something to female connectors receiving male connectors. It doesn't even make any sense. There's nothing in the specification that ties that limitation. But they did use the word receive. They didn't use the word connect. And it doesn't seem to me that the two are synonymous, or at least on summary judgment that they're automatically, as a matter of law, synonymous. It may be that that should have been submitted to the jury on whether these were receiving or not. Well, here's the problem, Your Honor. There was no genuine issue of material fact, because we all know that the portion of the Pulse of X Plus… Well, there is, if their definition of receiving is right. Well, they took an inconsistent position here, where at the very same time that they were arguing summary judgment of non-infringement and saying the Pulse of X Plus male nozzles cannot receive the tip, they were saying there's no genuine issue of material fact that the Veripulse, their prior art male nozzles, do receive the tip. And so you can see where the district court was coming from, where you can't take both positions and say there's no genuine issue of material fact. And here, nobody was disputing. Stryker did not dispute that Veripulse has male nozzles that receive the tip. And because those Veripulse male nozzles that receive the tip are exactly the same as the Pulse of X Plus male nozzles that receive the tip, there was no genuine issue. That was the end of the story. So, again, there hasn't been any tying by Zimmer of their receptacle definition, which, by the way, we've never seen until this appeal. There's no way to tie that to the specification. They cite some portions of the specification that talk about clogging and leaking, but those aren't tied to the word receive. There is discussion of things like the single-piece drain tube as being one of the reasons why clogging and leaking is solved by this invention. There's also elsewhere in the specification discussion of seals being placed on the tip and the handpiece, and that also helps with the clogging and leaking. So it's not just because something receives that there's a clogging and leaking solution. So, again, no tying of the limitations that they're trying to bring in to this claim term receive. Let me turn you back to the 329 patent. Sure. It seems to me that your infringement case here depends on whether could-be-held is equated to designed-to-be-held, and it just seems a bit extreme. I mean, anything could be held in a pinch. I mean, you talk about surgeons that they're flighty and they do what they need to do at a split second. So just because anything could be held, even if it was sharp-edged, how can that possibly satisfy being designed-to-be-held? Well, as this Court has noted in previous opinions, it's not the subjective intent of the designer that matters here. We're looking at products, and if you look at this invention, the 329 patent as a whole, what is this invention about? This is the first time that anyone had ever done a disposable, self-contained Paul Cleavage system, meaning that there is a motor and a pump, an electric motor and a pump, in the handpiece itself. That's what this is talking about. It's not an invention about deciding with mathematical precision what part is the handle, what part is the barrel. This is all about an ergonomic handpiece that is supposed to be held in multiple ways. I think the analogies that have been given in this case have been a bit confusing, because as Mr. Dunner was talking about, this is like a gun, this is what he says. Well, this is not like a gun. A Paul Cleavage device is not a gun. You don't hold a Paul Cleavage device at a target. Rather, what you're doing is you're aiming the Paul Cleavage device down at a surgical site or at a wound site. The dilemma for the doctor is you don't know how the patient is going to be situated on the operating room table. They might be high, they might be low, their knee might be up, their knee might be down. Physicians are all different sizes. You might be tall, you might be short, you have big hands, you have small hands. That's the beauty of this invention, is that you don't have to hold it like this. If you're short, that's very hard to do. That's why it is important to have a handpiece that can be held in multiple different ways. That's why that was such an important feature touted by not just Stryker in trying to sell its products, but also Zimmer. When you look at it from that perspective, it's clear to see that the handle, it does matter. Is it designed to be held by the hand or hand? Zimmer, at trial, tried to make the argument that it was not, because look at these textured areas. Those are the only portions that are designed to be held by the hand. All it took was for the jury to actually have the opportunity to manipulate the device to see how these products are used. Who can forget the video testimony of the Pulse of Excellence designers themselves, demonstrating precisely how these devices were designed to be held. Again, we also had substantial evidence in the form of Zimmer's patent application, their failed patent application, that was directed to describing the Pulse of X Plus prior to litigation. There's a description of a barrel grip, a pistol grip, and then an alternate grip that we show in our briefs that we describe where you have to move your hand further up. Then you can see clearly that that nub is designed to be held by the hand. Another important, actually there's two other issues that I want to raise with respect to the 329 patents. That is, we can't forget that the jury also found infringement under the doctrine of equivalence. What does that mean? That means even if that nub is not spaced between the top and bottom of the handle, so even if there's no literal infringement, the jury found that that was an insubstantial change. So there was substantial evidence to support the jury verdict in the form of extensive testimony by Stryker's expert, Mr. Sheehan, discussing the function-way result analysis. Aside from that, we've heard differing testimony as to whether handle has a plain and ordinary meaning versus whether it has a special meaning that is limited to what's in the specification. Here, what we haven't really discussed at length, or Mr. Dunner certainly didn't discuss, at page 51 to 53 of Stryker's brief, we describe how even under Zimmer's proposed construction, which actually isn't a construction at all but rather a negative limitation, there's still infringement. So the specification describes the barrel as being that portion that extends forward from the top of the handle. This is not where Zimmer chose to place his motor. Rather, Zimmer placed his motor here, in the back. That's not part of the barrel. If Stryker is a lexicographer, it's not part of the barrel. It's nowhere described in the specification. And so even under their construction, they still lose. And that's why we believe that their positions have been objectively unreasonable, because even what they're saying in appeal, they still lose on infringement. And with respect to matching that they have relied on, the issue involved in that 133 file history, totally different. They say it's the same issue about what's part of the handle, what's part of the barrel. If you look at the claim scopes, and Stryker has laid them out on page 46 of its brief, you can see side by side what are the different claim scopes. So claim 2 talks about a handle, does not mention a barrel, does not mention any angles, whereas claim 39 of the 133 application talks about this has to be a reciprocating pump driven by a motor, where the motor drive has to act through an angle between the barrel and handle. It cannot be coaxial. And the response, the offense action response by Stryker, that Zimmer sort of pulls some words out of context, they make it clear that they're distinguishing matching because matching motor and pump are coaxially aligned. There's no angle drive. The point of that discussion was not, again, to determine with mathematical precision whether the motor was in the handle or barrel. That was not at all what they were directed to. And again, claim 2 doesn't care about angles, doesn't care about barrels. And the Regents of the University of Minnesota case from this court makes it clear, when you're looking at Ducevallo, you don't look at words in isolation. You look at the claim scope in context. Another very important issue regarding that file history is matching is not Pulse of X+. Matching is a pneumatic device that Zimmer didn't even rely on as prior art to try to invalidate the 329. Rather, matching is uniquely situated to not be held by that nub area. It's got sharp corners there. It's got a threaded plug. It's got a short barrel, external tubing. It's not at all like the Pulse of X+. So, matching does not save Zimmer. I'm going to quickly just refer your Honor for speaking a bit about the willfulness question. And we did drop a footnote in our brief and we provided supplemental authority. But we do feel that deference should be given to the district court and to the jury here on the question of objective recklessness. Why? Because the Supreme Court said that the district court is in the best position to determine the relative strength of a party's position. And here below, there were a lot of issues at trial and prior to trial. Only a small subset has been brought up on appeal here. And this whole, looking at all of the defenses, this district court was angry. I think you can tell by the way the opinion is written that the district court felt very strongly that this infringement was flagrant. There was copying. There was no opinions of counsel. There was no attempt to have any kind of remedial action whatsoever, even after being found to infringe on summary judgment. And so, here again, the district court was in the best position to assess the credibility of the witnesses, and that became a very important issue with all these fact issues such as infringement, anticipation, obviousness, all of the underlying factual considerations. Credibility was key. And here, the district court specifically commented that the relative quality of the expert testimony was notably favorable to Stryker. Now, one last point that I want to get to is the attorney fee question. And under Octane, now you don't have to have both the objective and subjective prongs. Here, I just want to remind everyone that the subjective prong of willfulness has not been appealed. And we believe that that alone is enough to sustain the finding of exceptional case and the attorney fee award. Thank you. Let me talk briefly about the 329 patent and the handle issue. Before you run out of time, can I ask you about the 807 patent and your friend's suggestion that your interpretation of receipt varied between your infringement arguments and your invalidity arguments? I'm sorry, I didn't understand your question, Your Honor. Well, I'm talking about the receipt first. And on appeal, you're arguing that receipt has a very narrow technical meaning. But apparently, during the invalidity proceeding, you argued or you suggested that this other device which didn't have that definition, wouldn't comply with that definition of receipt was prior art. And so I just wanted you to explain to me why that's not an inconsistency that we should take into account or therefore defer to the district court interpretation of receipt in a broader sense. One moment, Your Honor. The broad and narrow construction, if my recollection is correct, occurred in connection with the lock assembly. They argued our positions were inconsistent one with the other. Those positions were alternative positions. They are inconsistent if you argue them both at the same time. We argued that if the interpretation was broad, then it applied one way in infringement and the same way for validity. If it was narrow, the same thing. We are not arguing both things at the same time. The receiving point has to do with the disclosure in the 807 patent that the handpiece had to have a female tube to avoid clogging. If the handpiece had a male tube, you'd end up with debris and particles hitting the edge. Right, I understand that. That's your kind of narrower technical argument about what receipt means. But when you were arguing for invalidity based upon, I think, your client's prior art, you pointed to a device that didn't have that set up. Right, that was in connection with the lock assembly issue. It did not. We argued that the lock assembly was defined so broadly by Stryker and the district court that as broadly as they defined it, the earlier varipulse would anticipate. But we argued alternatively that if it was narrow, then there'd be no infringement. So that was the alternative argument. Now I just want to talk about matching. Do you have any other questions on that point? I want to talk about matching very briefly. If you look at page 25220 of the appendix, which is in volume 2, you will see their statement about matching. This one is trying to distinguish matching on the ground that it was a totally different thing. It had a short handle. It wasn't in alignment. It was. The issue there was what is the barrel and what is the handle? The motor was in the nub exactly as it is in the accused device. And here's what they said. Also in contrast, matching's motor and pump are coaxially aligned, both being in the barrel of the matching handpiece. Although the matching handpiece has a handle, which is angled with respect to the barrel, the matching motor is not in the handle or at an angle to the barrel. The same thing applies to the accused device. Now, she also talked about the doctrine of equivalence. The doctrine of equivalence, aside from the fact that the three reasons for keeping it where it is, out of the handle, do not apply when it's in the handle. The fact is that there's a prosecution history estoppel here. We also argue claim vitiation, which would eliminate their reliance on the doctrine of equivalence. And I think I've probably run out of time. I see the chief judge looking at me strangely. We thank both parties for the case. Thank you. Thank you.